UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 09-10183-GAO

UNITED STATES OF AMERICA,

v.

DEREK CATALANO,
Defendant.

FINDINGS AND ORDER
January 11, 2011

O'TOOLE, D.J.

The defendant, Derek Catalano, has filed three separate motions to suppress evidence. After hearing and on consideration of the parties' evidence and arguments, the following orders are made with respect to the motions.[1]

I. **Motion to Suppress III (Statements) (dkt. no. 89)**

The defendant seeks to suppress statements made to Drug Enforcement Agency ("DEA") task force agents who came to his residence on the night of May 14, 2009. After an evidentiary hearing, I find the following facts and make the corresponding conclusions of law:

At about 9:45 p.m. on May 14, 2009, DEA task force agents went to 63 Earle Street, Fall River, looking to speak with the defendant Catalano, who they believed resided there. When no one answered their knocking on the door, they reached Catalano by telephone. He was in the second floor apartment of the two-family residence, where his father lived, and he came down and opened the door. With Catalano's permission, the agents entered the common entrance vestibule of the two-family house. The agents told him that, as they spoke, a search warrant was

---

[1] The motions are considered in the order in which they appear on the docket, not in the order indicated in their captions.

being executed at the premises of Catalano's business, D & C Specialty Detailing, located at 1451 South Main Street, Fall River.

Catalano's father, Carl Soares, came down and invited the agents to come in to the upstairs apartment. The agents, Soares, and Catalano all sat casually in the open kitchen and living room area. An agent read Catalano his Miranda rights from a preprinted card, even though the agents had not placed him in custody. Catalano acknowledged that he understood his rights, but he declined to sign a form to that effect.

The parties dispute whether Catalano was in "custody" for Fifth Amendment purposes. I find, on the evidence adduced at the hearing, that he was not. It appears that Soares, apparently unaware of any participation by his son in drug trafficking, was seeking to cooperate with the agents and encouraging his son to do likewise. In particular, when the agents asked Catalano if he would consent to a search of his first floor apartment, where he lived with his girlfriend, Soares encouraged him to agree and allow the search. Catalano refused, however, and eventually gave the agents as a reason that they might find some marijuana and related paraphernalia that belonged to his brother.

Despite his refusal to consent to a search of the first-floor apartment, Catalano otherwise cooperated by talking with the agents. In particular, when the agents received a call from other agents exercising the search warrant at the D & C business premises, Catalano responded to questions by directing the agents to a place at that business where they might (and actually thereafter did) find a large sum of money hidden away.

Without rehearsing the evidence in detail, I find that the statements Catalano made to the agents were made voluntarily, with an intelligent and informed understanding of his right to refuse to answer questions. Indeed, the evidence indicated that Catalano cooperated and provided

information when he chose to do that, and refused to cooperate and stood on his rights when he chose to do that, such as by refusing to consent to a search of the first-floor apartment, even with his father urging him to do so. His will was not overborne by the agents.

For these reasons, there is no reason to suppress the statements he made to agents that night. The statements were not the product of a custodial interrogation, and they were made voluntarily. The motion to suppress the statements is DENIED.

## II. Motion to Suppress Physical Evidence II (Search Warrants) (dkt. no. 91)

The defendant also seeks to suppress evidence seized as a result of the execution of search warrants at 63 Earle Street, his residence, and at D & C, his place of business.

A crucial assertion in the affidavit that led to the issuance of the state warrant for the search of the defendant's apartment at 63 Earle Street was that the defendant had told agents that there was some marijuana and drug paraphernalia to be found there. The defendant urges that the warrant application was defective in that that information had been unlawfully obtained. For the reasons set forth above, the defendant's statement that marijuana was likely to be found in the first floor apartment was not the product of coercive custodial interrogation, and it was not improper for the agents to rely on that statement in seeking the warrant. The fruits of that search will not be suppressed.

The defendant asserts several reasons for suppressing the fruits of the search at the D & C business premises at 1451 South Main Street. He argues that the information in the affidavit in support of the issuance of the warrant about those premises was too "stale" and did not sufficiently establish a "nexus" between the drug distribution activity and the premises. The arguments are related, because information that is too stale may weaken the inference of nexus.

Here, a transaction that took place at D & C on April 22 was one of a series in which Catalano was allegedly involved over a number of months, as indicated by information from a confidential source and from wiretaps. Drug trafficking can be episodic, with intervals occurring even during the course of regular ongoing activity. A three or four week interval does not make the most recent episode stale if an inference is fairly drawn that the defendant's participation—and thus his possession of incriminating evidence—is ongoing. See United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999). Such is the case here.

However, while the information in the affidavit was sufficient to support a reasonable inference that Catalano was still involved in the conspiracy as of May 14, it was relatively weak as to the proposition that evidence of his participation might be found at the business premises on South Main Street. Obviously, Catalano could be associated by inference with the premises, but the inference that the business was a place where evidence of the criminal activity might be found was said to rest on the fact that Aguiar allegedly delivered drugs to Catalano there on one occasion. There was no information in the affidavit to indicate whether that was another instance of a routine practice or an aberrational departure from routine. Perhaps a weak inference could arise from the fact that, because Catalano was a regular participant in the conspiracy, evidence of the crime could be found wherever he regularly was. It is not implausible, of course, that Catalano's business premises would serve as a place where he would "stash" drugs and/or drug-related cash and records. Nevertheless, on the information presented in the affidavit, concluding that is more of a speculation than an inference.

Unfortunately for the defendant, however, the "good faith exception" announced in United States v. Leon, 468 U.S. 897 (1984), applies and forecloses suppression of the evidence seized from 1451 South Main Street, even if the affidavit was inadequate to establish the

necessary nexus. "Under Leon, the good faith exception applies when government agents rely on a warrant in objective good faith and in the interest of justice suppression is generally inappropriate." United States v. Woodbury, 511 F.3d 93, 99 (1st Cir. 2007). The recognized exceptions to the good faith exception are here inapplicable. In particular, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," nor the warrant so "facially deficient . . . that the executing officers [could not] reasonably [have] presume[d] it to be valid." Id. (quoting Leon, 468 U.S. at 923).

The defendant next argues that the warrant was unlawfully executed because the execution—and the discovery of relevant evidence—occurred after the hours authorized by the warrant. The warrant limited execution to between the hours of 6:00 a.m. and 10:00 p.m. Even if once it might have been uncertain when the execution of the warrant actually began, evidence at the hearing established clearly that the execution had commenced before 10 p.m., within the authorized limits. The fact that the search, timely commenced, continued beyond 10 p.m. does not invalidate the search in the absence of factors making the continuation of the search "unreasonable" under all the circumstances. See United States v. McCarty, 475 F.3d 39, 43-44 (1st Cir. 2007). No such factors were shown. The business was closed at the time of the search, so there was no disruption of ordinary business and no employees were inconvenienced. Continuation of the search past 10 p.m. was reasonable in the circumstances.[2]

The motion to suppress evidence from the searches at 63 Earle Street and 1451 South Main Street is DENIED.

---

[2] The restriction to "daytime" execution is presumably for the benefit of the occupants of the premises to be searched. The defendant's suggestion that neighbors might have been disturbed by the noise of the search—there was no evidence of actual disturbance—is thus irrelevant.

### III. Motion to Suppress Physical Evidence I (Electronic Surveillance with Warrant) (dkt. no. 93)

This motion seeks to suppress evidence of intercepted and recorded conversations on several telephones. The affidavit submitted in support of the application for Title III electronic interception amply set forth probable cause to believe that the target telephones were being used by participants in a conspiracy to distribute illegal drugs and that interception would yield evidence of the criminal activity. The affidavit further justified the interception as "necessary" not only to gather evidence that could not otherwise reasonably be expected to be obtained by other means, but also to support and corroborate evidence that was obtained otherwise. Finally, the defendant's objection that the warrants were unlawfully issued because the authorizing letters from the Department of Justice omitted the signature of a particular official is frivolous. The motion is DENIED.

### IV. Conclusion

The defendant's several motions to suppress are DENIED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge