UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 09-10183-GAO

UNITED STATES OF AMERICA

v.

DEREK CATALANO,
Defendant.


OPINION AND ORDER
July 26, 2016

O'TOOLE, D.J.

On January 21, 2011, Derek Catalano pled guilty to conspiracy to possess with intent to distribute oxycodone and possession with intent to distribute cocaine. Catalano was sentenced to seventy-eight months' imprisonment. He now moves to vacate his convictions pursuant to 28 U.S.C. § 2255 because of irregularities that occurred in the Massachusetts state drug laboratory that had weighed and tested some of the cocaine found on his property.[1] See generally Massachusetts Office of Inspector General, Investigation of the Drug Laboratory at the William A. Hinton State Laboratory Institute 2002 – 2012 (2014), http://www.mass.gov/ig/publications/reports-and-recommendations/2014/investigation-of-the-drug-laboratory-at-the-william-a-hinton-state-laboratory-institute-2002-2012.pdf (last visited July 26, 2016) [hereinafter OIG Report].

A sample of the alleged cocaine that Catalano was convicted of possessing was sent to the Massachusetts Hinton State Laboratory, where preliminary testing was conducted by Charles

---

[1] He also moves for a new trial under Rule 33. Because Catalano pled guilty, Rule 33 is inapplicable. See United States v. Graciani, 61 F.3d 70, 78 (1st Cir. 1995).

Salemi, then the supervisor of the Laboratory, and secondary testing was completed by chemist Annie Dookhan.[2] In July 2012, laboratory misconduct was discovered at the Hinton State Laboratory, and Dookhan later admitted to failing to conduct the requisite drug analysis tests, tampering with drug samples, and falsely attesting to lab results. See OIG Report 5–7. The defendant argues that because he did not know about Dookan's malfeasance, his plea was involuntary and should be vacated.

Under the Federal Rules of Criminal Procedure, "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e). Generally, a defendant may not challenge his guilty plea on collateral review. See Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (describing collateral attack of a guilty plea as an "arduous trek"). An exception occurs where a defendant "collaterally attack[s] his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006). To demonstrate that his plea was involuntary, the defendant must make two showings:

> First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea. Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.

Id. at 290 (citation omitted).

---

[2] Salemi signed the preliminary certificate, and his signature appears first on the final certificate. (Mot. for New Trial and/or to Vacate Pursuant to 28 U.S.C. § 2255 & Incorporated Mem. of Law, Exs. 1 & 2 (dkt. nos. 385-1, 385-2).) Dookhan only signed the final certificate, and her signature appears second. (Id.) These records appear consistent with the interpretation that Salemi was the primary chemist and Dookhan the secondary. See OIG Report 35–37. Salemi also signed an affidavit to that effect. (See Opp'n to Derek Catalano's Mot. for New Trial and/or to Vacate Pursuant to 28 U.S.C. § 2255, Ex. 1, Aff. of Charles B. Salemi, at ¶ 8 (dkt. no. 400-1).) The defendant does not challenge this characterization of the evidence.

The First Circuit has reserved the question whether federal prosecutors are to be held responsible for Dookhan's misconduct. Wilkins, 754 F.3d at 28. Accordingly, the Court begins with the second necessary Ferrara showing—whether Dookhan's misconduct influenced the defendant's decision to plead guilty. Under this inquiry, the defendant must show "a reasonable probably that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial." Id. (quoting Ferrera, 456 F.3d at 294 (alteration in original)). The First Circuit has outlined a non-exclusive list of factors relevant to this determination:

> (i) [W]hether the sequestered evidence would have detracted from the factual basis used to support the plea; (ii) whether the sequestered evidence could have been used to impeach a witness whose credibility may have been outcome-determinative; (iii) whether the sequestered evidence was cumulative of other evidence already in the defendant's possession; (iv) whether the sequestered evidence would have influenced counsel's recommendation as to the desirability of accepting a particular plea bargain; and (v) whether the value of the sequestered evidence was outweighed by the benefits of entering into the plea agreement.

Ferrera, 456 F.3d at 294 (citations omitted). Consideration of these factors leads to the conclusion that Catalano cannot demonstrate that he would not have pleaded guilty but for Dookhan's conduct.

For one thing, there was substantial circumstantial evidence supporting a finding that the substance found on Catalano's property was cocaine. See Wilkins, 754 F.3d at 29 (finding that revelations of Dookhan's misconduct did not suggest that the plea was involuntary in light of "powerful circumstantial evidence"). As outlined in uncontested portions of Catalano's presentence report, Catalano was suspected of being a member of an oxycodone ring. When federal agents arrived at Catalano's home with a search warrant, he showed them where he had concealed drug paraphernalia, including boxes of Ziploc bags, two scales, three cellphones, and three bottles of inositol, a product often used to cut cocaine. Catalano also showed officers where he had hidden what later tested as approximately 600 grams of cocaine. The fact that Catalano affirmatively led

the officers to this stash indicates that he was aware of its illegal nature and that it was not some other substance. In addition, during a proffer session, one of the defendant's coconspirators in the oxycodone ring described occasionally purchasing cocaine from the defendant.

Further, the defendant does not avow his innocence, nor has he retreated from his admissions of guilt made during his Rule 11 hearing. "This admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack." Wilkins, 754 F.3d at 30; see also United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea."). During the hearing, the government summarized the factual basis of the cocaine charge, and the Court specifically inquired as to whether he was guilty of possession with intent to distribute cocaine, to which the defendant answered yes. (See Tr. of Change of Plea 17–19 (dkt. no. 241).) Moreover, before his sentencing hearing, the petitioner submitted objections to the presentence report in which he contested the amount of oxycodone pills that had been attributed to him. Yet the defendant "agree[d] that he was in possession of 603 grams of powder cocaine on May 14, 2009 at the time of the execution of the search warrant at his business." (Def.'s Objs. to Pre-Sentence Report at 2 (dkt. no. 313).)

Lastly, Catalano has not disputed submissions by the government indicating that Dookhan was not the primary chemist with respect to Catalano's sample. Dookhan's secondary role in testing Catalano's sample suggests that the impeachment value of Dookhan's misconduct would be minimal here. See United States v. Gray, 79 F. Supp. 3d 317, 323 (D. Mass. 2015) (explaining that because Dookhan only served as a secondary chemist, "the impeachment value of the Dookhan scandal is far less powerful than [the defendant] suggests"). And while the defendant insists that the problems at the Hinton State Laboratory were widespread, the OIG Report concluded that

"Dookhan was the sole bad actor at the Drug Lab" and there was "no evidence that Dookhan tampered with any drug samples assigned to another chemist even when she played a role in confirming another chemist's test results." OIG Report 1. "[T]he OIG found no evidence to support treating cases in which Dookhan confirmed another chemist's results with any increased suspicion about Dookhan's involvement." Id. at 3.

Ultimately, circumstantial evidence of guilt, coupled with Dookhan's secondary role in testing the samples, suggests that Catalano cannot show that knowledge of the Dookhan scandal would have changed his decision to plead guilty. His actual guilty plea under oath and lack of any subsequent assertion of innocence confirm it.[3]

The defendant's Motion for New Trial and/or to Vacate Pursuant to 28 U.S.C. § 2255 and Incorporated Memorandum of Law (dkt. no. 385) is DENIED.

Finally, because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[3] The defendant also argues that the government failed to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), to turn over exculpatory or impeaching evidence. But "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 633 (2002). Contrary to the defendant's assertion, the Dookhan scandal is merely impeaching; it does not affirmatively suggest that the substance seized was not cocaine. Thus, there is no Brady v. Maryland claim here. See also United States v. Wilkins, 948 F. Supp. 2d 87, 89 n.3 (D. Mass. 2013) (concluding same).